1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11

KYLE WALKER,

Plaintiff,

12

13

v.

14

HOWMEDICA OSTEONICS CORP., et al.,

15

Defendants.

16
17
18

Case No. 22-cv-264-MMA (DDL)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Doc. No. 59]

19      Plaintiff Kyle Walker ("Plaintiff") brings this action against Defendants

20 Howmedica Osteonics Corp. ("Howmedica") and Stryker Employment Company, LLC

21 ("Stryker" and collectively with Howmedica, "Defendants") asserting claims for unpaid

22 wages and related penalties.  *See* Doc. No. 23 ("First Amended Compl." or "FAC").

23 Defendants move for summary judgment in its entirety, or in the alternative, for partial

24 summary judgment.  *See* Doc. No. 59.  Plaintiff filed an opposition, to which Defendants

25 replied.  *See* Doc. Nos. 62, 65.  The Court found this matter suitable for determination on

26 the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc.

27 No. 64.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN**

28 **PART** Defendants' motion for summary judgment.

# I. Background[1]

Except where otherwise noted, the following facts are not reasonably in dispute. This employment case involves a dispute over commissions. On March 3, 2014, Plaintiff began working for Howmedica as a Sales Associate. Doc. No. 59-1 ("Defendants' Separate Statement of Undisputed Material Facts" or "DSS") at No. 1. Howmedica employed Plaintiff from March 3, 2014 to December 31, 2019. DSS at No. 2. Effective October 1, 2015, Howmedica promoted Plaintiff to the position of Sales Representative. DSS at No. 3. Howmedica "later became Stryker." Doc. No. 62-1 at 32–44 ("Plaintiff's Separate Statement of Undisputed Material Facts" or "PSS") at No.1. Stryker employed Plaintiff from January 1, 2020 to June 4, 2021. DSS at No. 2. Defendants employed Plaintiff within the Orthopaedics Division. DSS 5. From the date of his promotion through December 31, 2017, Plaintiff's assigned sales territory included hospitals and surgeons in the Palm Springs area. DSS at No. 8. Throughout his employment, Plaintiff received commissions for sales of implants to surgeons and hospitals. DSS at Nos. 8, 17; PSS at No. 4.

At all times during his employment, Plaintiff was an at-will employee. DSS at No. 6. Upon hire, Plaintiff acknowledged receipt of the Stryker Orthopaedics Employee Handbook. DSS at No. 7. Pursuant to the Handbook, Howmedica and Stryker reserved the right to "alter, modify, change or terminate the terms and conditions of employment at its sole discretion, with or without notice to employees." *Id.*

From January 1, 2017 through December 31, 2017, Plaintiff received an annual base salary, and monthly sales commissions of a percentage of sales up to the previous year's sales (the "base rate") and a percentage of sales exceeding the previous year's

---

[1] These material facts are taken from Defendants' Separate Statement of Undisputed Material Facts and Plaintiff's responses thereto, *see* Doc. Nos. 59-1, 62-1 at 1–32, Plaintiff's Statement of Undisputed Material Facts and Defendants' responses thereto, *see* Doc. No. 62-1 at 32–44, 65-1, as well as the parties' supporting declarations and exhibits.

sales (the "growth rate").  DSS at No. 9.[2]  During this time, Plaintiff's commissions were based solely on Plaintiff's own individual sales of implants.  *See* DSS at No. 10.[3]  Additionally, if Plaintiff met his sales quota, he would receive a bonus.  DSS at No. 9.  In early 2017, Jeremiah Wurzbacher ("Wurzbacher") became Plaintiff's manager.  DSS at No. 12.  Wurzbacher remained Plaintiff's manager until Plaintiff's resignation in 2021.  *Id.*

It is undisputed that as of January 1, 2018, Defendants began redistributing the commissions of Plaintiff and other sales representatives under a "team-based" approach.  DSS at Nos. 16, 17; PSS at No. 14.  Under the "team-based" commissions approach, Plaintiff did not receive commissions as a percentage of his individual net sales, but as a percentage of the portion of the team sales in his territory that would be allocated to him.  PSS at No. 14.  Undisputedly, Plaintiff was paid a percentage allocation of the net sales for specific territories beginning in 2018 under the "team-based" approach.  DSS at No. 17.

Additionally, on May 27, 2020, Defendant Stryker provided, and Plaintiff executed, a separate compensation plan in respond to the COVID-19 pandemic ("the COVID Plan").  PSS at No. 74.  Plaintiff received a subsidy of $5,802 and $1,702 in January and February 2021.  PSS at No. 76.

Plaintiff sent his notice of resignation to Stryker on May 24, 2021.  DSS at No. 48.[4]  Plaintiff's last day of work was June 4, 2021.  PSS at No. 77.

---

[2] The parties dispute the applicable base and growth rate percentages at various points of Plaintiff's employment with Defendants. *See, e.g.,* DSS at Nos. 10, 13.

[3] Plaintiff disputes Defendants' Fact 10, in which Defendants state that "From January 1, 2017 through December 31, 2017, Plaintiff received 100 percent of the sales originating from a particular territory[,]" on the basis that Plaintiff's commissions were instead based on Plaintiffs' base and growth percentages. *See* Doc. No. 62-1 at 4–5.  However, Plaintiff does not appear to dispute that his commissions at this time were based solely on Plaintiff's own individual sales. *See id.*

[4] Plaintiff "disputes" Defendants' Fact 48 on the basis that "Plaintiff's references to his allocations were inaccurate." Doc. No. 62-1 at 31.  This is not a valid basis for disputing the fact; Plaintiff attacks a potential inference from the fact, not the fact itself.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the "outcome of the suit" under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial.  *See Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252; *see also Day v. Sears Holdings Corp.*, No. 11-09068, 930 F. Supp. 2d 1146, 2013 WL 1010547, at *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").  Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de*

*Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies,* 210 F.3d 1099, 1103 (9th Cir. 2000). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

Further, in assessing a party's motion for summary judgment, a "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3) (a district court "need only consider only the cited materials"); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (district courts are "not required to comb the record to find some reason to deny a motion for summary judgment"). Rather, it is the obligation of each party to cite to "particular parts of materials in the record" or otherwise show that "the materials cited do not establish the absence or presence of a genuine dispute" in their briefing. Fed. R. Civ. P. 56(c)(1).

### III. DISCUSSION

By way of his First Amended Complaint, Plaintiff brings five claims against Defendants: (1) failure to pay commission wages in violation of California Labor Code § 200 *et seq.*; (2) breach of contract; (3) failure to pay wages at time of termination in violation of California Labor Code § 201 *et seq.*; (4) failure to provide accurate wage statements in violation of California Labor Code § 226 *et seq.*; and (5) unfair business practices in violation of California Business & Professions Code § 17200. *See* FAC. Defendants now move for summary judgment as to all five claims. Doc. No. 59. The Court first addresses evidentiary issues and then addresses each of Plaintiff's claims in turn.

## A.      Evidentiary Issues

Defendants submit a number of objections to Plaintiff's evidence.  *See* Doc. No. 65-2.  Plaintiff opposes Defendants' objections.  *See* Doc. No. 66.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c).  However, courts will consider evidence with content that would be admissible at trial even if the form of the evidence would be inadmissible.  *See Celotex Corp.*, 477 U.S. at 324; *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (admitting a diary in considering summary judgment where its contents were within the author's personal knowledge and could be admitted in several ways at trial despite a hearsay objection).  Authentication is a "condition precedent to admissibility." *Orr*, 285 F.3d at 773.  Documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure 56(c)] and the affiant must be a person through whom the exhibits could be admitted into evidence."  *Id.* at 774 (emphasis added) (quotation omitted).  Foundation does not require personal knowledge where it can be based on the methods permitted by Federal Rules of Evidence 901(b) or 902.  *Id.* at 774.  Furthermore, "'objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and unnecessary to consider here."  *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).

Accordingly, save for the exception below, the Court does not consider any objections on the grounds that the evidence is irrelevant, speculative, that it constitutes hearsay or inadmissible lay opinion, that it constitutes an improper legal conclusion, or that there is a lack personal knowledge.  *See Burch*, 433 F. Supp. 2d at 1122.  This disposes of the majority of Defendants' objections.  The Court also addresses the remaining objections below, which are directed towards portions of Plaintiff's

declaration.  *See* Doc. No. 62-3 ("Plaintiff's Decl.").

Defendants object to paragraph three of Plaintiff's Declaration on the grounds that it contains improper legal conclusions and is irrelevant.  *See* Doc. No. 66 at 13.  Plaintiff states in the third paragraph that "[w]hen Wurzbacher changed my compensation plan in 2018, he gave me no notice.  I did not agree to the revised compensation plan. In fact, I did not know my compensation plan had been changed."  Plaintiff's Decl. ¶ 3.  As an initial matter, both of Defendants' bases for objecting to this paragraph are duplicative of the summary judgment standard itself and are not appropriate at this stage.  *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1156 (S.D. Cal. 2022) (quoting *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).  Moreover, they are without merit.  Contrary to Defendants' assertion, Plaintiff, a layperson, may use the terms "notice" and "agree" in the ordinary use of those words.  *See* Fed. R. Evid. 701(a).  Additionally, as will be discussed below, this paragraph is relevant.  Accordingly, the Court **OVERRULES** Defendants' objections to the third paragraph of Plaintiff's Declaration.

Defendants also object to the eighth paragraph of Plaintiff's Declaration, in its entirety, pursuant to the sham affidavit rule.  *See* Doc. No. 66 at 17 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  Specifically, Defendants object on the basis that Plaintiff's declaration at paragraph eight "contradicts prior deposition testimony" and that "during his deposition, Plaintiff testified he did not know the date or year when he received Exhibit A-10."  Doc. No. 66 at 17 (citing Doc. No. 59-4 ("Plaintiff's Depo.") Ex. A-1 at 109:07–110:01); *see also* Doc. No. 59-5 ("Stryker Orthopaedics Overview of Compensation Summary of Terms" or "Stryker Orthopaedics Overview") Ex. A-10.  In his declaration, Plaintiff states: "Regarding Defendant's Exhibit A-10, I do not remember when exactly I received it, but I estimate that it was sometime during 2020."  Plaintiff's Decl. ¶ 8.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy*, 952 F.2d at 266.

The Ninth Circuit has fashioned "two important limitations on a district court's discretion to invoke the sham affidavit rule." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). First, the rule does not apply automatically to every case where a contradictory affidavit is introduced; rather, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* (quoting *Kennedy*, 952 F.2d at 267). Second, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998–99. "[A] district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

Plaintiff's only response to Defendants' objection is that "Plaintiff's deposition testimony does not contradict this statement because he was not asked for an estimate of when he received the document." Doc. No. 66 at 17. The record does not support Plaintiff's position:

> Q: Do you recognize what I've marked as Exhibit 9?[5]
> A.· Yes.
> Q. And can you tell me what it is?
> A. This looks like the Stryker Orthopaedics Overview of Compensation Summary of Terms.
>
> . . .
>
> Q. And when did you receive Exhibit 9?
> A. I can't recall what date I received the -- the document on.
> Q. Okay. And do you recall what year?
> A. I don't.
>
> . . .

---

[5] Exhibit A-10, submitted in support of Defendants' motion for summary judgment, was identified as Exhibit 9 in Plaintiff's deposition. *See* 59-4 ("Plaintiff's Depo.") Ex. A-1 at 4.

Q.  You already testified you received Exhibit 9 when you were employed at Stryker; correct?
A.  Yes.
Q.  But you just don't recall when you received it; correct?
A.  Correct.

. . .

Q.  And are you aware of any document that you can review that might refresh your recollection as to when you received Exhibit 9, which is Stryker Orthopaedics Overview of Compensation Summary of Terms?
A.  No, I can't think of a date that would help me remember.
Q.  A document, I asked.
A.  Oh, a document?
Q.  Yeah, are you aware of any document that might refresh your memory as to when you received Exhibit 9?
A.  No, I'm not aware of a document.
Q.  Are you aware of anything else that might refresh your memory as to when you received Exhibit 9?
A.  I'm not aware.

Plaintiff's Depo. at 109:11–110:1; 112:3–8; 123:4–17.

Plaintiff's statement in his declaration that he "does not remember when exactly I received [the Stryker Orthopaedics Overview], but I estimate that it was sometime during 2020[,]" Plaintiff's Decl. ¶ 8, clearly and directly contradicts his sworn testimony that he could not recall the date or year he received the document and that he was "not aware" of a document or anything else that might refresh his memory.  Plaintiff's Depo. at 109:11–110:1; 112:3–8; 123:4–17.  Plaintiff's lack of recollection is not a minor inconsistency but instead bears on what the parties themselves identify as a significant issue in his case—when and to what extent Plaintiff became aware of any changes to his compensation plan.  Plaintiff fails to provide "a reasonable explanation" for the newly remembered facts.  *See Yeager*, 693 F.3d at 1081.

Accordingly, the Court concludes this portion of Plaintiff's declaration is a sham and declines to rely on it for the purpose of creating a genuine dispute as to when Plaintiff received the Stryker Orthopaedics Overview.  *Id.* at 1080–81 ("Several of our

cases indicate that a district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember."). Accordingly, the Court **SUSTAINS** Defendants' objection to the eighth paragraph of Plaintiff's declaration pursuant to the sham affidavit rule.

As to paragraphs 2 and 5, the Court **OVERRULES** Defendants' objections that the allegations contradict Plaintiff's prior deposition testimony as the Court has not been provided citations to the purported inconsistencies. *See* Doc. No. 65-2 at 5, 6.

As to paragraph 6, the Court **OVERRULES** Defendants' objection that the allegation is "improper . . . expert opinion evidence." *See id.* at 6–7 (citing Fed. R. Evid. 701, 702). At present, it appears that paragraph 6 could fall within the scope of proper lay opinion testimony. *See* Fed. R. Evid. 701(a).

## B.   Claim 2: Breach of Contract[6]

A breach of contract claim under California law requires "(1) the existence of a contract[,] (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822 (Cal. 1968)); *see also CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008).

Defendants argue that Plaintiff's claim fails as a matter of fact and law because of Plaintiff's at-will employment status and because, under the express terms of the Employee Handbook and the Stryker Orthopaedics Overview "Defendants had the express right to change Plaintiff's compensation." Doc. No. 59 at 23–24 (citing DSS at No. 7) (additional citations omitted). Defendants further urge that they prospectively "notified Plaintiff in writing of his Compensation Plan and Defendants paid him

---

[6] Because Plaintiff's Claim 1 for "Failure to Pay Commission Wages—Violation of Cal. Lab. Code § 200 *et seq.*" turns on the application of contract law, the Court first addresses Plaintiff's breach of contract claim. *See* FAC ¶¶ 20–26.

accordingly." *Id.* at 25–26 (citing DSS at No. 13–44); Doc. No. 65 at 12 (citing DSS at Nos. 6, 14).  In particular, Defendants contend that the terms of the Stryker Orthopaedics Overview of Compensation Summary of Terms Overview advised Plaintiff in writing of the new methodology for paying commissions under the new Compensation Plan, including allocations aligned to specific territories, and that this methodology governed Plaintiffs' compensation from January 1, 2018 until his resignation in 2021.  *See* Doc. No. 59 at 8, 22–23 (citing DSS at Nos. 14, 15, 44).  The Stryker Orthopaedics Overview includes the following language:

> The following overview confirms Stryker Orthopaedics' method for paying commission and incentives.  It is intended to provide an overview of the Company's current compensation methods and the impact those methods have on sales employee earnings. . . .
>
> **Commission Calculation Methodology:**
>
> Certain employees are eligible to earn commission payments based upon the net sales in an assigned territory.  Net sales are determined by taking the gross sales invoiced within the defined time period and reconciling against those sales any credit memos (e.g., returned merchandise, price discrepancies, clerical errors, etc.) and adjustments (e.g., customer rebates, bad debt including write offs resulting from customer bankruptcies, and accounts sent for collection).  Territory sales are determined by taking the sum of net sales for the surgeon, hospital, and marketing divisions aligned to the territory and the sales rep's percentage allocation to the territory.  Territory alignments and territory allocations will be adjusted as necessary to drive business results.

Stryker Orthopaedics Overview at 477, 481 (emphasis in original).

Defendants argue Plaintiff assented to this change through his continued performance with Defendants.  *See* Doc. No. 59 at 19–22 (citing *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 812 (2012)).

Plaintiff argues in opposition that his claim survives summary judgment because the Stryker Orthopaedics Overview did not change his compensation methodology and that he therefore should have been paid according to the original methodology he agreed

to—*i.e.*, from 2018 to 2021, he should have been paid solely based on his individual sales rather than the team-based allocation approach. *See* Doc. No. 62 at 8–9, 17–29. In particular, Plaintiff argues that the Stryker Orthopaedics Overview could not supersede the prior contract because he did not receive advance notice of the change and therefore he could not have agreed to any change. *Id.* at 21–26. Plaintiff disputes when and to what extent he became aware of changes to his compensation plan. DSS at No. 13; PSS at Nos. 5, 9, 16, 31–32, 36. To that end, Plaintiff states in his declaration that "[w]hen Wurzbacher changed my compensation plan in 2018, he gave me no notice. I did not agree to the revised compensation plan. In fact, I did not know my compensation plan had been changed." Plaintiff's Decl. ¶ 3. Moreover, Plaintiff contends that—outside of a "slightly changed compensation plan" effective June 15, 2020—he did not agree to any change in his compensation plan from 2018 to 2021. *See* Doc. No. 62 at 11 (citing Plaintiff's Decl. ¶ 3); Doc. No. 62 at 9 (citing Ex. D); *see also* Plaintiff's Decl. ¶ 4. Additionally, Plaintiff argues that the Stryker Orthopaedics Overview could not have changed Plaintiff's commission structure because it does not comply with California Labor Code § 2751. Doc. No. 62 at 21–26. California Labor Code § 2751 states, in relevant part:

> (a) Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

> (b) The employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee. In the case of a contract that expires and where the parties nevertheless continue to work under the terms of the expired contract, the contract terms are presumed to remain in full force and effect until the contract is superseded or employment is terminated by either party.

Cal. Labor Code § 2751.

1    Under California law, an employer is permitted to change the terms of an at-will

2    employee's employment, and the employee's continued performance constitutes an

3    acceptance of the new terms.  *Asmus v. Pac. Bell*, 999 P.2d 71, 76 (Cal. 2000)

4    ("California law permits employers to implement policies that may become unilateral

5    implied-in-fact contracts when employees accept them by continuing their

6    employment"); *DiGiacinto v. Ameriko–Onserv Corp.*, 69 Cal. Rptr. 2d 300, 304 (Cal. Ct.

7    App. 1997) ("[A]n employer of an at-will employee can unilaterally change the

8    compensation agreement without being in breach of the employment agreement . . . .

9    [W]ith respect to an at-will employee, the employer can terminate the old contract and

10   make an offer for a unilateral contract under new terms."); *Schachter v. Citigroup*, Inc.,

11   47 Cal. 4th 610, 620 (2009) (quoting *DiGiacinto*, 59 Cal. App. 4th 629, 637 (1997) ("An

12   'employee who continues in the employ of the employer after the employer has given

13   notice of changed terms or conditions of employment has accepted the changed terms and

14   conditions.'")).  However, California law requires "reasonable notice of the change" and

15   consent in the form of remaining with the employer before a modification of an

16   employment contract is effective.  *See Asmus*, 23 Cal. 4th at 13.  Continued employment

17   is also required as consideration for the new contract formed by the modification.  *Id.*

18   Commission plans reserving to a defendant the right to unilaterally change the plans are

19   permissible under California law; however, "such a clause is contrary to California law if

20   applied retroactively[;]" the clause can only be applied prospectively.  *Matthews v. Orion*

21   *HealthCorp Inc.*, No. C-13-04378 EDL, 2014 U.S. Dist. LEXIS 120916, at *32 (N.D.

22   Cal. Aug. 27, 2014) (citing *Asmus*, 23 Cal. 4th at 16); *cf. Temple v. Guardsmark, LLC*,

23   No. C 09–02124 SI, 2010 WL 1461629, at *2–4 (N.D. Cal. 2010).

24   The parties do not dispute that, at all times during his employment, Plaintiff was an

25   at-will employee; that upon hire, Plaintiff acknowledged receipt of the Stryker

26   Orthopaedics Employee Handbook; and that pursuant to the Handbook, Howmedica and

27   Stryker reserved the right to "alter, modify, change, or terminate the terms and conditions

28   of employment and its sole discretion, with or without notice to employees."  DSS at

Nos. 6, 7.  It is also undisputed that Plaintiff was paid according to the team-based allocation methodology and that Plaintiff continued working for Stryker for over three years after the commissions change.  DSS at Nos. 17, 50.

The Court agrees with Plaintiff that, by its own terms, the Stryker Orthopaedics Overview is not itself a contract.  The document includes the following language:

> While this document is intended to briefly summarize Stryker Orthopaedics' compensation plans, it shall not be used to interpret or in any way govern the terms of your employment relationship with Stryker. The aforementioned statements of Company policy, practices, and benefits do not constitute the terms of an employment contract, either expressed or implied.  Further, the Company maintains the right to change its policies and procedures with or without notice. Any changes to this compensation plan will be communicated in writing and apply prospectively only.

Stryker Orthopaedics Overview at 481.

Additionally, as discussed in further detail *infra* Section III.E, the Stryker Orthopaedics Overview does not comply with California Labor Code § 2751.  *See* Cal. Lab. Code § 2751. However, Plaintiff cites no authority for the proposition that noncompliance with California Labor Code § 2751 renders modification of an employment contract ineffective, and the Court has found none.  Rather, case law suggests that the appropriate remedy for noncompliance with the signed writing requirement of California Labor Code § 2751 is through the UCL.  *Swafford v. IBM*, 408 F. Supp. 3d 1131, 1152–54 (C.D. Cal. 2019); *Beard v. IBM*, No. C 18-06783 WHA, 2020 U.S. Dist. LEXIS 62796, at *28–29 (Apr. 9, 2020); *Rodriguez v. Trugman*, 2023 Cal. Super. LEXIS 9129, at *12–13 (Mar. 10, 2023); *see also infra* Section III.E.

However, what remains in dispute is the compensation methodology Defendants were contractually obligated to pay Plaintiff according to; here, this determination turns on whether Defendants provided Plaintiff with "reasonable notice of the change"—both in terms of the timing and content of the purported notice—and whether Plaintiff consented to any change in the form of remaining with his employers.  *See Asmus*, 23

Cal. 4th at 13.

Defendants put forth some evidence that Plaintiff received advanced notice of the new methodology for paying commissions.  *See* DSS at No. 13, 14.  In particular, Defendants point to an email exchange between Wurzbacher and an HR Coordinator discussing members of Wurzbacher's team who "received" the "new Sales Compensation Terms and Conditions" "last month" but had not returned a signed version.  Doc. No. 59-5 ("Email Exchange") Ex. A-9.  The earliest email in the thread lists a date and time of "Jan 10, 2018, at 7:51 AM."  *Id.* at 475.  Wurzbacher identifies Exhibit A-10, the Stryker Orthopaedic Overview, as the subject of the email exchange in Exhibit A-9.  Doc. No. 59-5 ("Wurzbacher Depo.") Ex. A-8 at 133:17–134:8, 136:4–9.  Defendants also proffer Wurzbacher's Declaration, in which he discusses implementation of the team-based allocation approach and states that "[i]n December 2017, Howmedica provided Sales Reps under my management, including Mr. Walker a document titled 'Stryker Orthopaedics Overview of Compensation Summary of Terms' [ ] detailing Sales Reps' compensation methodology under the new Compensation Plan, including allocation percentages."  Doc. No. 59-6 ("Wurzbacher Decl.") Ex. B ¶¶ 5–7.  Finally, Defendants proffer excerpts from Wurzbacher's Deposition as evidence that Plaintiff received notice of the change in compensation methodology in 2017.  *See* Wurzbacher Depo. at 116:23–117:3, 120:1–24, 121:6–122:9; 132:25–134:8, 135:5–136:9, 185:24–186:10.

In opposition, Plaintiff urges that there is a genuine issue of material fact as to whether Plaintiff received prospective notice of any change.  *See* Doc. No. 62 at 22–24, 29.  Plaintiff states in his declaration that "[w]hen Wurzbacher changed my compensation plan in 2018, he gave me no notice.  I did not agree to the revised compensation plan.  In fact, I did not know my compensation plan had been changed."  Plaintiff's Decl. ¶ 3.

The Ninth Circuit has recognized that a party's affidavits are always self-serving and therefore "[i]n most cases, [that] an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact.  Only in certain instances—such as when a declaration states only conclusions, and not such

facts as would be admissible in evidence, —can a court disregard a self-serving declaration for purposes of summary judgment."  *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (internal quotation marks and citation omitted).[7]

Drawing all reasonable inferences in favor of Plaintiff as the nonmoving party—as the Court must do—the Court concludes there is a genuine issue of material fact as to whether Plaintiff received reasonable, prospective notice of the change to his compensation method.  *See Stegall*, 350 F.3d at 1065.  Additionally, whether Plaintiff's continued performance constituted assent to the change in his compensation methodology turns on when Plaintiff received notice of the change, if at all.  This is also a triable issue of fact on this record.[8]  The Court therefore **DENIES** Defendants' motion for summary judgment on these bases and concludes there is a triable issue of fact as to (1) whether Plaintiff received reasonable, prospective notice of the change in compensation methodology; and (2) whether Plaintiff's continued performance constituted assent to the change.  *See id.* at 1065.

In his opposition to the motion for summary judgment, Plaintiff additionally argues that his breach of contract claim should survive summary judgment because Defendants

---

[7] Plaintiff also argues that "[e]ach time that Wurzbacher changed Mr. Walker's compensation plan by changing the allocation, he did so with no notice to Mr. Walker."  Doc. No. 62 at 11 (citations omitted).  However, Plaintiff points to no evidence requiring Defendants to provide advanced notice of the specific amount of Plaintiff's commission each month.  Plaintiff's breach of contract claim turns on whether the discretionary allocation amendment is binding, which itself turns on whether Plaintiff received reasonable, prospective notice of that change in compensation methodology—not whether Plaintiff received prospective notice of specific allocation amounts.

[8] Defendants also proffer Plaintiff's monthly Commission Statements and audit logs of Compass, an internal digital repository "where Joint Replacement Sales Representatives [ ], including Mr. Walker, receive monthly Commission Statements[.]"  *See* Doc. No. 59-8 ("Patrick Decl.") ¶¶ 1–3; DSS at No. 39 (citing Plaintiff's Depo. at 52:12–19, 54:9–16, 54:23–55:15; Doc. No. 59-4 ("Compass Audit Log") Ex. A-4; Doc. No. 59-8 ("Patrick Decl.") Ex. C ¶ 7; Doc. No. 59-9 ("Compass Audit Log") Ex. C-2; Doc. No. 59-12 ("Crandall Decl.") Ex. E ¶ 11); Doc. No. 59-5 ("Walker's Commission Statements") Ex. A-6.  While this evidence may be relevant to Plaintiff's breach of contract claim, it does not bear on whether Plaintiff received notice *before* January 1, 2018—*i.e.*, the date Defendants urge the new compensation method became effective.  Doc. No. 59 at 12.  Further, it does not conclusively demonstrate as a matter of fact that Plaintiff received notice *after* the effective date.

breached the duty of good faith and fair dealing.  Doc. No. 62 at 26–29.[9]  Plaintiff

contends that "Defendant allocated the commissions on the 'team' sales however it

wanted, with Wurzbacher subjectively making allocations without constraint" and that

"[e]ven if Defendant's unilateral decision to change [Plaintiff's] structure to give

Wurzbacher complete discretion was lawful, Defendant may not exercise that discretion

in a way that injured [Plaintiff']s legitimate expectations." *Id.* at 28–29.

"The covenant of good faith and fair dealing, implied by law in every contract,

exists merely to prevent one contracting party from unfairly frustrating the other party's

right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 8

P.3d 1089, 1110 (Cal. 2000).  "The covenant thus cannot 'be endowed with an existence

independent of its contractual underpinnings.'" *Id.* (quoting *Waller v. Truck Ins. Exch.*,

Inc., 900 P.2d 619, 639 (Cal. 1995)).  "It cannot impose substantive duties or limits on

the contracting parties beyond those incorporated in the specific terms of their

agreement." *Id.*

The problem with this argument, as Defendants urge, is that "Plaintiff cannot point

to any promise in the Stryker Orthopaedics Overview or elsewhere that Defendants did

not have maximum discretion over allocations or that Defendants injured Plaintiff's

'legitimate expectations.'" Doc. No. 65 at 13.[10]  Therefore, the Court **GRANTS**

summary judgment in Defendants' favor to the extent that Plaintiff brings "breach of the

duty of good faith and fair dealing" as a separate claim or a theory underlying his breach

of contract claim.

---

[9] It is unclear if Plaintiff seeks to raise the "breach of the duty of good faith and fair dealing" as a
separate claim or a theory underlying a breach of contract claim.  The parties did not brief the issue.  The
Court assumes without deciding that the "breach of the duty of good faith and fair dealing" can be raised
directly for the first time on summary judgment or brought as a theory underlying a breach of contract
claim.

[10] Because Defendants did not raise the issue, the Court assumes without deciding that Plaintiff can
newly raise the covenant of good faith and fair dealing for the first time in his opposition to the motion
for summary judgment.

**C.     Claim 1: Failure to Pay Commission Wages—Cal. Lab. Code § 200 *et seq.***

Plaintiff alleges that he was owed commissions pursuant to California Labor Code §§ 200, *et seq.*  A salesperson's right to a commission depends on the terms of the contract for compensation.  *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 853 (2009).

Plaintiff argues that "California law precludes an employer from withholding wages that have already been earned by performance of agreed-upon requirements." Doc. No. 62 at 17 (first citing *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 707 (2005); then citing Cal. Lab. Code § 221).  Plaintiff urges that "Defendant failed to pay all commissions it owed to [Plaintiff]."  *Id.* at 17–18.

California Labor Code § 221 protects employees against unlawful deductions of their earned wages.  *Harper v. Charter Communs., LLC*, No. 2:19-cv-00902 WBS DMC, 2021 U.S. Dist. LEXIS 28747, at *38 (C.D. Cal. Feb. 12, 2021).  Under § 221, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  Cal. Lab. Code § 221.  "[A]n employee's 'wages' or 'earnings' [under § 221] are the amount the employer has offered or promised to pay, or has paid pursuant to such an offer or promise, as compensation for that employee's labor."  *Kemp v. Int'l Bus. Machs. Corp.*, No. 3:09-cv-03683, 2010 WL 4698490, at *5 (N.D. Cal. Nov. 4, 2010) (quoting *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 228 (Cal. 2007)).  Commissions can qualify as wages under California Labor Code § 221, but as the court noted in *Kemp*, "the right of a salesperson or any other person to a commission depends on the terms of the contract for compensation."  *Id.* (citations omitted); *see also Swafford*, 383 F. Supp. 3d at 934.  Accordingly, a California Labor Code § 221 claim requires "some showing that [the plaintiff] is contractually entitled to the commissions he claims to have been denied."  *Harper*, 2021 U.S. Dist. LEXIS 28747, at *38 (quoting *Swafford*, 383 F. Supp. 3d at 934).

Plaintiff does not dispute that Defendants accurately compensated him under the team-based allocation approach.  *See* Doc. No. 65 at 10.  However, because the Court

finds there are triable issues of fact bearing on whether Plaintiff is bound by this allocation change, the Court likewise **DENIES** Defendants' motion for summary judgment as to Plaintiff's failure to pay commission wages claim.

**D.   Claim 3: Failure to Pay Wages at Time of Termination—Cal. Lab. Code § 201 *et seq.***

Under California law,

> When an employment relationship comes to an end, the [California] Labor Code requires employers to promptly pay any unpaid wages to the departing employee.  The law establishes different payment deadlines depending on the manner of departure. . . . Labor Code section 202 specifies the default deadline for paying employees who [ ] resign: immediately at the time of quitting, if the employee has given sufficient advance notice, and within 72 hours if the employee has not. (Id., § 202, subd. (a).)

*Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93, 105–06 (2022).

Defendants move for summary judgment as to this claim on two grounds.  First, Defendants argue that this claim fails to the extent it is derivative of Plaintiff's claims for unpaid commissions and breach of contract. Doc. No. 59 at 26.  Plaintiff asserts that "[b]ecause summary judgment cannot be granted on Plaintiff's principal claims, his derivative claim for failure to pay all final wages also stands." Doc. No. 62 at 29.  As noted above, Plaintiff does not dispute that Defendants accurately compensated him under the team-based allocation approach.  *See* Doc. No. 65 at 10.  But again, because the Court has denied summary judgment for Defendants on Plaintiff's unpaid commissions claim (Claim 1) and breach of contract claim (Claim 2), the Court **DENIES** Defendants' motion for summary judgment as to Plaintiff's failure to pay wages at time of termination claim.

Second, Defendants argue that "[a]lthough Plaintiff also alleges that Defendants 'unlawfully deducted $9,000 in 'Covid Pay' given to employees as a reward for their continued employment during the height of the pandemic' (FAC ¶ 38), the claim still fails given that Defendants could recoup recoverable guarantees (i.e., unearned

payments) upon notice of resignation." Doc. No. 59 at 26.

The parties do not dispute that on May 27, 2020, Stryker provided and Plaintiff executed and accepted a separate compensation plan in response to the COVID-19 pandemic (the "COVID Plan"). DSS at No. 45. The COVID Plan states, in relevant part:

> I acknowledge and agree that the compensation advanced to me as part of this sales leadership and representative compensation plan (the "Plan") is not earned compensation and that if I leave Stryker before May 31, 2021, I am responsible for repaying Stryker these advanced funds no later than my termination date. If I leave Stryker for any reason prior to repaying these advanced funds in full, I agree that Stryker may deduct such payments from any funds owed to me as of the date that I give notice of my intent to resign and/or any funds owed to me upon my termination, to the extent permitted by law.

Doc. No. 59-5 (the "COVID Plan") Ex. A-11.

The parties also do not dispute that Plaintiff gave notice of his resignation to Defendant Stryker on May 24, 2021 and that Plaintiff's last day of work was June 4, 2021. *See* Doc. No. 59-4 (the "Resignation Letter") Ex. A-5; PSS at No. 77; DSS at Nos. 2, 48, 50. Accordingly, this claim appears to turn on the meaning of the term "leave." However, the parties devote minimal briefing to the COVID Plan, and none of the parties offer any evidence or case law regarding the interpretation of the word "leave" in this context. The Court concludes that Defendants have not met their burden of establishing the absence of a genuine issue as to any material fact, and more importantly, their entitlement to judgment as a matter of law. The Court therefore **DENIES** Defendants' motion for summary judgment as to Plaintiff's failure to pay wages at time of termination claim to the extent it is based on the theory that Defendants unlawfully deducted COVID pay.

**E.   Claim 4: Failure to Provide Accurate Wage Statements—Violation of Cal. Lab. Code § 226 *et seq.***

Employers must provide itemized wage statements to employees containing specified information, including wages earned and hours worked.  Cal. Lab. Code, § 226(a).  Defendants argue that this claim is meritless because it is "derivative of Plaintiff's failing claims for unpaid commissions, breach of contract, and failure to pay wages at time of termination."  Doc. No. 59 at 27.  Plaintiff urges that "because Defendant failed to compensate Plaintiff for all commission wages earned, his wage statements were necessarily inaccurate."  Doc. No. 62 at 30.  To the extent Plaintiff's claim for failure to provide accurate wage statements is derivative of Claims 1, 2, and 3, the Court **DENIES** Defendants' motion for summary judgment for the reasons discussed above.

**F.   Claim 5: Unfair Business Practice—Violation of Cal. Bus. & Prof. Code § 17200**

California's UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ."  Cal. Bus. & Prof. Code § 17200.  Under the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009).  To establish an "unlawful" business practice, "a UCL action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices[.]"  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (Ct. App. 2008) (internal quotation marks omitted).  "An 'unfair' business practice is actionable under the [UCL] even if it is not 'deceptive' or 'unlawful.'"  *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 990 (Ct. App. 2008).  An "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 965 (Ct. App. 2000) (internal quotation marks and citations omitted).  "An act or practice is unfair if the consumer

injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (Ct. App. 2006).  Finally, a "fraudulent" business practice is distinct from a common law claim and a plaintiff does not need to prove the elements of common law fraud to obtain relief.  *In re Tobacco II Cases*, 46 Cal. 4th at 312.  "[T]he term 'fraudulent,' as used in the UCL, has required only a showing that members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838.

Defendants urge that "[b]ecause Plaintiff cannot establish his first through fourth causes of action, his section 17200 claim fails as a matter of law."  Doc. No. 59 at 27.  Plaintiff alleges violation of all three prongs of the California Business & Professions Code § 17200 ("UCL").  *See* FAC ¶¶ 49–53.  In his opposition to the motion for summary judgment, Plaintiff urges that Defendants are not entitled to summary judgment on his UCL claim because "[t]he claim for violation of the UCL is derivative of the claims for failure to pay commission wages and violation of [California] Labor Code §§ 203 and 226" and because Defendants "violated California's labor laws, including Labor Code § 2751 . . . it has also violated the UCL."  Doc. No. 62 at 31.

To the extent Plaintiff's UCL claim is based on Plaintiff's claims for failure to pay commission wages (Claim 1), Plaintiffs' failure to pay wages at time of termination claim (Claim 3), and violation of California Labor Code § 226 (Claim 4), the Court **DENIES** Defendants' motion for summary judgment because the Court has denied summary judgment for Defendants on those claims.

Additionally, Plaintiff urges that "[California] Labor Code § 2751 . . . may serve as a predicate for violation of California's Unfair Competition Law." *Id.* (citations omitted).  The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  A violation of California Labor Code §§ 2751 may "[ ] serve as a predicate violation for plaintiff's Section 17200 [claim]."

*Beard*, 2019 U.S. Dist. LEXIS 60302, at *15.

"California Labor Code Section 2751 requires that whenever an employer enters into a contract of employment with an employee, the employer must provide a written contract to the employee if the employee's payment involves commissions for services rendered in California." *Piccarreto v. Presstek, LLC*, No. CV 16-1862 DMG (JCx), 2017 U.S. Dist. LEXIS 137255, at *4 (C.D. Cal. Aug. 24, 2017) (citing Cal. Lab. Code § 2751(a)). "In addition, an employer must then give a 'signed' copy of the contract to the employee and obtain a receipt for the contract from the employee." *Id.* (citing Cal. Lab. Code § 2751(b)).

Thus, an employer's failure to provide a signed copy of a modified contract of employment to an employee receiving sales commissions appears to violate the express terms of § 2751(b). *Id.* at *5. In a footnote in their reply brief, regarding Plaintiff's breach of contract claim, Defendants argue that "there has been substantial compliance by Defendants" with § 2751 and that "[a]lthough Plaintiff appears not to have added his signature to the [Stryker Orthopaedics] Overview, the elements and purpose of Section 2751 were met." Doc. No. 65 at 11 fn.4. However, Defendants have not provided any argument or case law regarding this issue in the context of Plaintiff's UCL claim. The Court concludes that Defendants have not met their burden of establishing the absence of a genuine issue as to any material fact and their entitlement to judgment as a matter of law. The Court therefore **DENIES** Defendants' motion as to Plaintiff's UCL unlawful prong claim insofar as the claim is premised on Defendants' purported violation of California Labor Code § 2751.

***

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.  Consistent with Magistrate Judge Leshner's May 1, 2023 Minute Order, the parties are directed to contact Magistrate Judge Leshner's chambers within three (3) business days of the date of this Order.

**IT IS SO ORDERED**.

Dated:  June 2, 2023

HON. MICHAEL M. ANELLO
United States District Judge